**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **LAURENCE BONNER,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **Case number 4:06cv0613 HEA** |
| | ) | **TCM** |
| **AL LUEBBERS,** | ) | |
| | ) | |
| **Respondent.** | ) | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

The 28 U.S.C. § 2254 petition of Laurence Bonner ("Petitioner"), a Missouri prisoner, for federal habeas corpus relief is before the undersigned United States Magistrate Judge for a review and a recommended disposition. <u>See</u> 28 U.S.C. § 636(b).

<u>Background</u>

A few weeks before Petitioner's jury trial on two drug-related charges began in Hannibal, Missouri, in May 2000, the trial court heard evidence on his motion to suppress the identification of him by Craig Haley, a confidential informant who had allegedly twice purchased drugs from Petitioner. (Resp. Ex. B at 7.) An officer with the Northeast Missouri Task Force, Michael Beilsmith, testified about how the photographic lineup shown Haley was assembled and conducted. (<u>Id.</u> at 13-15, 23-25.) The motion was overruled. (<u>Id.</u> at 42.)

The day trial was to begin, trial counsel argued several motions in limine, including one to exclude evidence that Petitioner had $241 in his front pants pocket (in addition to

$50 in another pocket) when he was arrested on December 11, 1999, and one to exclude evidence that he was unemployed. (<u>Id.</u> at 41, 42.) The prosecutor opposed the motions on the grounds that it was relevant that Petitioner had a large amount of cash although he was unemployed. (<u>Id.</u> at 41, 43) The motions were overruled without prejudice. (<u>Id.</u> at 44.)

Beilsmith was the first witness to testify. He described providing Haley with $100 in United States currency on December 10, 1999, having previously photocopied the bills, placing a body wire on him, and checking the wire to make sure it was working properly. (<u>Id.</u> at 132-33.) Haley was then taken to a location known to be frequented by drug dealers and dropped off. (<u>Id.</u> at 134, 179.) Haley walked out of sight and later could be heard over the wire apparently exchanging money for drugs. (<u>Id.</u> at 135.) Haley described the individual he had done business with as he walked back to Beilsmith's truck. (<u>Id.</u>) Once there, he turned over a plastic wrap with what appeared to be crack cocaine and half of the currency. (<u>Id.</u> at 135, 136.) This same procedure was followed the next day. (<u>Id.</u> at 140.) Again, Haley returned with a package of what appeared to be crack cocaine. (<u>Id.</u> at 141.) Haley informed Beilsmith that the seller had been the same person as the night before. (<u>Id.</u> at 143.)

Beilsmith next testified about the photographic lineup shown Haley and his selection of Petitioner as the man from whom he had purchased the drugs. (<u>Id.</u> at 148-50.) The tape recordings of Haley's two transactions were played for the jury. (<u>Id.</u> at 154, 155.) On cross-examination, Beilsmith testified that, with one inapplicable exception, he had not

heard anyone during the two taped conversations identify themselves and had not seen the transactions.  (<u>Id.</u> at 157-60.)

Another officer with the task force had been present on both occasions when Haley was fitted with a wire and had made the two buys.  (<u>Id.</u> at 176, 177.)  Her testimony was similar to that given by Beilsmith.  (<u>Id.</u> at 176-79, 180-81.)

Craig Haley was the next witness to testify.  His testimony was consistent with that of the previous two witnesses, and he identified Petitioner as the person from whom he had purchased crack cocaine.  (<u>Id.</u> at 185, 187, 190, 191-93, 94-99.)

Haley's testimony was followed by that given by a third task force officer who had arrested Petitioner on December 11, 1999, and had found on him $50 in currency that had been given Haley.  (<u>Id.</u> at 214-16.)  The officer further testified that $241 in cash had also been found on Petitioner in a different pants pocket than the $50.  (<u>Id.</u> at 217.)  A criminalist with the Missouri State Highway Patrol testified that he had tested the contents of the two packages earlier marked as exhibits and both tested positive for cocaine.  (<u>Id.</u> at 221-23.)  The two exhibits were admitted into evidence.  (<u>Id.</u> at 223.)

The State rested its case.  Petitioner did not present any evidence.

Less than two hours after retiring to deliberate, the jury returned a verdict of not guilty on the charge of delivery of a controlled substance arising from the December 10 transaction and guilty on the same charge arising from the December 11 transaction.  (<u>Id.</u> at 250.)  The jury also assessed a sentence of 15 years imprisonment.  (<u>id.</u>; Resp. Ex. A at 31-32.)

Trial counsel filed a motion for new trial with 23 allegations of trial court error, including error in accepting the jury's inconsistent verdict on the second charge; error in allowing the testimony about the $241 found on him when arrested; error in overruling his objection to the prosecutor's remarks about Petitioner being on a street corner, unemployed and with $241 in his pocket, such remarks being evidence of "uncharged and unprovable misconduct"; and error in allowing the prosecutor to ask the jury to impose the maximum sentence of 15 years. (Id. at 33-39.)

The motion was overruled, and Petitioner was sentenced to 15 years imprisonment. (Id. at 40.)

In his direct criminal appeal, Petitioner raised two claims of trial court error. First, the trial court had erred in allowing the prosecutor to present evidence and argument that he was unemployed and had $241 in cash, in addition to the $50 "buy money," when arrested. (Resp. Ex. C at 7.) Second, the trial court had erred in overruling his motion to suppress identification. (Id. at 8.) In a two-paragraph, per curiam opinion, the appellate court found both arguments to be without merit. (Resp. Ex. E.) On July 19, 2001, the appellate court denied Petitioner's motion for rehearing or transfer to the Missouri Supreme Court. (Pet. at 2.) On August 21, 2001, the Missouri Supreme Court denied his motion for transfer. (Id.)

Petitioner then filed a pro se motion to vacate, set aside, or correct his conviction and sentence pursuant to Missouri Supreme Court Rule 29.15. (Resp. Ex. F at 5-16.) He argued that his sentence violated the Missouri sentencing guidelines and repeated the two

arguments raised in his direct criminal appeal. (Id.) His motion was amended by counsel and raised two different grounds for relief: (1) his constitutional rights were violated because the jury pool was not selected at random from a fair cross-section of the citizens of Marion County, and (2) his trial counsel was ineffective for not challenging the jury pool selection process. (Id. at 18.)

An evidentiary hearing was held at which the circuit clerk for the Hannibal district in Marion County and trial counsel testified. (Id. at 27-40.) The clerk explained that the jury pool is computer-generated from a master list that comes from the state. (Id. at 30.) When a jury panel is requested by a judge, the clerk commands the computer to randomly select 50 people from the list. (Id.) Trial counsel testified that he knew that the jurors for trials in the Hannibal district were selected from two townships and that the jurors for the Palmyra district were selected from the other townships.[1] (Id. at 32.) He thought this method of selecting jurors was constitutional. (Id. at 33.)

The motion court denied relief, finding, in relevant part:

> [Petitioner] makes no claim that the jury selection process utilized in his case systematically excluded any distinctive group within the district of the court having exclusive jurisdiction over the charge and the case against him. He does not contend that any particular group is underrepresented or overrepresented by the selection process utilized within the jurisdiction. His complaint is simply that those outside the jurisdiction of the district of the court but residing in Marion County were not included in the process. There is no claim that the venire called was not a representative cross section of District 2 of the Circuit Court of Marion County and no claim that any

---

[1]Section 478.720, Mo.Rev.Stat., creates two geographical districts in Marion County: one, District 1, is at the county seat in Palmyra and the other, District 2, is at Hannibal. Petitioner was tried in District 2.

identifiable group in said District 2 was excluded from the jury selection process on the basis of sex, race, color, religion, national origin or economic status. There is no claim that the jury selection process in District 2 of the Circuit Court of Marion County violated the law of the State of Missouri contained in Section 494.400 through 494.505 RSMo. in any way except that the venire was drawn from District 2 of Marion County rather than Marion County as a whole. There is no evidence of nor even any contention of actual, identifiable prejudice to the [Petitioner] in the jury selection process utilized nor is any equal protection claim viable as those [Petitioner] contends are excluded from jury service are not excluded at all. They are eligible for jury service and have a right to serve on juries empaneled within the jurisdiction where they reside, District 1 . . . .

There was no evidence that the master jury list compiled and the jury panel selected for [Petitioner's] case did not represent a fair cross section of District 2 of the Circuit Court of Marion County, the exclusive jurisdiction.

(Id. at 43-44, 45.)

Petitioner raised his jury selection claim on appeal. (Resp. Ex. G at 7.) The appellate court declined to review Plaintiff's argument that his constitutional rights were violated because the jury pool was not selected at random from a fair cross section of the residents of Marion County, holding that "[a]llegations of trial error that are constitutional violations are not cognizable in a 29.15 motion absent a showing of exceptional circumstances for not raising the constitutional grounds on direct appeal" and that Petitioner had not even suggested such circumstances. (Resp. Ex. I at 4.) The court did review his argument that trial counsel was ineffective for not challenging the composition of the jury pool, finding in relevant part as follows.

[Petitioner] does not contend that venire persons were not selected at random, or that potential venire persons were excluded based on color, religion, sex, national origin, or economic status. Rather, his argument is that

the jurors were not selected from a fair cross-section of all the citizens of the county.

. . .

Although District 1 was not represented in [Petitioner's] jury pool, [Petitioner] adduced no evidence that it constituted a distinctive group. To qualify as a distinctive group, the group must have cohesion, there must be a particular quality defining the group, and a common thread that demonstrates that the group shares similar attitudes, ideas, or experiences. Additionally, the group must possess a community of interest which may not be represented by other segments of the populace.

. . .

[Petitioner] did not adduce any evidence at the hearing demonstrating how the result of his trial would have been different had the jury been selected from all of the townships in Marion County. [C]onclusory allegations of prejudice in [a] motion will not support a claim of ineffective assistance of counsel.

(Id. at 5, 6-7.) (Internal citations and quotations omitted.) On April 7, 2005, the appellate court issued its mandate. (Resp. Ex K at 3.)

On April 11, 2006, Petitioner, represented by counsel,[2] filed the instant § 2254 petition. He raises six grounds for relief: his conviction and sentence are unconstitutional because (1) evidence of uncharged crimes, i.e., the $241 in his pocket and his unemployment, was admitted or argued; (2) (a) the jury was not drawn from a fair cross-section of the community, having been drawn from only one of the two districts in the county, and (b) his trial counsel failed to challenge such; (3) he was unlawfully arrested

---

[2]Counsel has since withdrawn.

on December 11, 1999, and again on December 21, 1999[3]; (4) the jury's verdict of guilty on the December 11 count was inconsistent with their verdict on the December 10 count, both charges depending entirely on the testimony of Haley; (5) his sentence was cruel and unusual punishment; and (6) his trial counsel and his appellate counsel were ineffective for failing to present to the state courts "many of the issues" raised in his § 2254 petition. Respondent argues that (a) the petition is untimely; (b) grounds two through five are procedurally barred; (c) grounds one through five are without merit; and (d) ground six is not an independent claim but an unavailing explanation of the cause for Petitioner's procedural default.

## Discussion

Timeliness.  Under 28 U.S.C. § 2244(d)(1), "an inmate must file for federal habeas relief within one year of the date when a judgment becomes final by the 'conclusion of direct review or the expiration of the time for seeking such review, whichever is later.'" **Bishop v. Dormire**, 526 F.3d 382, 383 (8th Cir. 2008) (quoting § 2244(d)(1)(A)).  This one-year statute of limitations "is tolled for '[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending.'" **Id.** (quoting § 2244(d)(2)) (alteration in original).

---

[3]Specifically, Petitioner alleged that the charges for his December 11 arrest – possession with intent to sell cocaine – were changed after his arrest to delivery of a controlled sentence, a more serious felony, by the manipulation of fabricated evidence.  Also, neither arrest was supported by probable cause.

Respondent argues that the one-year statute began to run on April 7, 2005, when the Missouri Court of Appeals issued its mandate in Petitioner's post-conviction appeal and ended on April 7, 2006, four days before Petitioner filed his § 2254 petition.[4]

The one-year statute of limitations was tolled while Petitioner's post-conviction motion was pending. 28 U.S.C. § 2244(d)(2)); <u>see</u> **Williams v. Bruton**, 299 F.3d 981, 983 (8th Cir. 2002). The tolling ended when the Missouri Court of Appeals issued its mandate on April 7, 2005. <u>See</u> **Payne v. Kemna**, 441 F.3d 570, 572 (8th Cir. 2006) (application for state post-conviction review is pending until the mandate is issued). The statute of limitations then ran on April 7, 2006 – four days before Petitioner filed the pending petition.[5]

"[E]quitable tolling may be applied to [§2244(d)(1)'s] statute of limitations." **Riddle**, 523 F.3d at 857. "'Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way.'" **Id.** (quoting Walker v. Norris, 436 F.3d 1026, 1032 (8th Cir. 2006)). "Equitable tolling is 'an exceedingly narrow window

---

[4]The period between the conclusion of Petitioner's direct criminal appeal and the filing of his post-conviction motion does not count against the statute of limitations. Petitioner filed a motion to transfer his direct criminal appeal to the Missouri Supreme Court. That motion was denied on August 21, 2001. Less than 90 days later, on September 27, he filed his post-conviction motion. <u>See</u> **Riddle v. Kemna**, 523 F.3d 850, 855-56 (8th Cir. 2008) (en banc) ("Clearly, if a prisoner seeks review by the Missouri Supreme Court (whether granted or denied), the 90-day period for seeking certiorari tolls [§ 2244(d)(1)'s] statute of limitations.").

[5]Because the petition was filed by an attorney, the mailbox rule does not apply. <u>See</u> **Streu v. Dormire**, 557 F.3d 960, 962 (8th Cir. 2009).

of relief.'" **Id.** (quoting Jihad v. Hvass, 267 F.3d 803, 806 n. 3 (8th Cir. 2001)). Petitioner was represented by counsel when the Missouri Court of Appeals issued its mandate. He was represented by counsel when he filed his § 2254 petition. He does not allege that any extraordinary circumstances prevented the petition being filed four days earlier. Indeed, he does not answer at all Respondent's argument that his petition is untimely.

For the foregoing reasons, the Court finds the petition to be untimely filed.

Additionally, for the reasons set forth below, the Court also finds the grounds therein to be without merit, procedurally barred, or non-cognizable.

Ground One: Evidence of Uncharged Crimes. Petitioner's first ground was presented to, and rejected by, the state courts. He alleges that the references to the $241 found in his pants pocket and to his unemployment were impermissibly used to show he was a person of bad character and had a propensity to commit crimes.

"[I]n habeas corpus proceedings, it is not within [the federal courts'] province to 'reexamine state-court determinations on state-law questions.'" **Johnston v. Luebbers**, 288 F.3d 1048, 1056 (8th Cir. 2002) (quoting Estelle v. McQuire, 502 U.S. 62, 67-68 (1991)). See also **Taylor v. Bowersox**, 329 F.3d 963, 968 (8th Cir. 2003) ("A state's interpretation of its own law is virtually unreviewable by a federal court."). Thus, "'[a] state court's evidentiary rulings can form the basis for habeas relief under the due process clause only when they were so conspicuously prejudicial or of such magnitude as to fatally infect the trial and deprive the defendant of due process.'" **Osborne v. Purkett**, 411 F.3d 911, 917 (8th Cir. 2005) (quoting Parker v. Bowersox, 94 F.3d 458, 460 (8th Cir. 1996));

accord **Rousan v. Roper**, 436 F.3d 951, 958-59 (8th Cir. 2006); **Abdi v. Hatch**, 450 F.3d 334, 338 (8th Cir. 2006). "[T]his due process standard mandates a greater showing of prejudice than is needed to support a finding of plain error on appeal." **Griffin v. Delo**, 33 F.3d 895, 905 (8th Cir. 1994). Consequently, federal habeas review of an alleged due process violation in a state court conviction is narrow. **Anderson v. Goeke**, 44 F.3d 675, 679 (8th Cir. 1995).

"[T]here is no due process violation simply because a trial court admits evidence of a defendant's uncharged bad acts." **Harris v. Bowersox**, 184 F.3d 744, 752 (8th Cir. 1999). Rather, the habeas petitioner must show that the alleged error in admitting such evidence "rendered the entire trial fundamentally unfair." **Id.** (internal quotations omitted). Accord **United States v. Smith**, 487 F.3d 618, 622 (8th Cir.) ("The prejudicial effect of any improper testimony is determined by examining the context of the error and the strength of the evidence of the defendant's guilt." (internal quotations omitted)), cert. denied, 128 S.Ct. 322 (2007). The complained-of references were to $241 and to Petitioner being unemployed. Contrary to Petitioner's characterization, neither is a bad act or an uncharged crime. Both, however, were relevant to the State's position that Petitioner had come from St. Louis to Hannibal to sell drugs.

Challenges to evidence of acts more likely to be seen as indicative of a propensity to commit the crime charged have been rejected by the Eighth Circuit Court of Appeals. For instance, in **Rainer v. Department of Corrections**, 914 F.2d 1067, 1071 (8th Cir. 1990), the Eighth Circuit found no due process violation in the admission at the

petitioner's state criminal trial for the first degree murder of his girlfriend of evidence of prior misconduct toward three former wives, although that misconduct had occurred years before the murder. See also **Poole v. Wood**, 45 F.3d 246, 250 (8th Cir. 1995) (finding no due process violation in admission of evidence of 1979 sexual contact with 14-year old relative in trial of doctor charged with criminal sexual conduct committed against female patients between 1987 and 1990). Moreover, "[e]vidence is not unfairly prejudicial merely because it hurts a party's case." **United States v. Henderson**, 416 F.3d 686, 693 (8th Cir. 2005) (internal quotations omitted).

Title 28 U.S.C. § 2254(d) mandates that a federal court grant habeas relief on a claim that was adjudicated on its merits by the State courts only if the adjudication "'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States'" or "'resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" **Collier v. Norris**, 485 F.3d 415, 421 (8th Cir. 2007) (quoting § 2254(d)). "'[A] decision is "contrary to" federal law . . . if a state court has arrived at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if it confront[ed] facts that are materially indistinguishable from a relevant Supreme Court precedent but arrived at an opposite result.'" **Id.** (quoting Davis v. Norris, 423 F.3d 868, 874 (8th Cir. 2005)) (all but first alteration in original). "'A state court unreasonably applies clearly established federal law when it identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably

applies that principle to the facts of the prisoner's case.'" **Id.** (quoting <u>Davis</u>, 423 F.3d at 874) (alteration in original).  The state courts' adjudication of Petitioner's first ground does not fall within these narrow exceptions for a federal court to grant a state prisoner habeas relief.

    <u>Ground Two: The Jury Pool.</u>  Respondent argues that this ground is procedurally barred.  That portion challenging the composition of the pool was found by the state appellate court to be procedurally defaulted.  <u>See</u> **Phillips v. State**, 214 S.W.3d 361, 364 (Mo. Ct. App. 2007) (in Missouri, trial errors, including constitutional claims, known to a defendant must be raised in a direct appeal); <u>accord</u> **Antwine v. Delo**, 54 F.3d 1357, 1371 (8th Cir. 1995).  That portion challenging trial counsel's failure to object to the composition was rejected on its merits by the state appellate court in Petitioner's post-conviction proceedings.

    The Sixth Amendment right of the accused to the assistance of counsel is the right to *effective* assistance of counsel.  **Marcrum v. Luebbers**, 509 F.3d 489, 502 (8th Cir. 2007) (citing <u>Kimmelman v. Morrison</u>, 477 U.S. 365, 377 (1986)).  "Effective assistance is representation that 'play[s] the role necessary to ensure that the trial is fair.'"  **Id.** (quoting <u>Strickland v. Washington</u>, 466 U.S. 668, 685 (1984)) (alteration in original).  "To show a constitutional violation of the right to counsel a convicted defendant must show first, that counsel's performance was deficient, and second, that counsel's errors prejudiced the defense."  **Id.** (citing <u>Strickland</u>, 466 U.S. at 687).

To establish that counsel's performance was deficient, a petitioner must show that counsel "'made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'" **Greiman v. Thalacker**, 181 F.3d 970, 971 (8th Cir. 1999) (quoting <u>Strickland</u>, 466 U.S. at 687). To establish prejudice, a petitioner "'must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" **Armstrong v. Kemna**, 534 F.3d 857, 866 (8th Cir. 2008) (quoting <u>Strickland</u>, 466 U.S. at 694). "A reasonable probability is one sufficient to undermine confidence in the outcome." **Garcia v. Bertsch**, 470 F.3d 748, 754 (8th Cir. 2006) (internal quotations omitted). The question of prejudice from counsel's performance need not be reached, however, if the performance was not deficient. <u>See</u> **Parkus v. Bowersox**, 157 F.3d 1136, 1140 (8th Cir. 1998). Conversely, the question of counsel's allegedly deficient performance need not be reached if a petitioner has failed to show prejudice. <u>See</u> **Strickland**, 466 U.S. at 697; **Siers v. Weber**, 259 F.3d 969, 974 (8th Cir. 2001).

In the instant case, Petitioner has failed to show prejudice.

It is "an essential component" of the Sixth Amendment right to a jury trial that the jury pool be from a "representative section of the community." **Taylor v. Louisiana**, 419 U.S. 522, 528 (1975). This component does not require, however, that the chosen jury "mirror the community and reflect the various distinctive groups in the population." **Id.** at 538. It is required that, in order to establish a prima facie claim, "'a recognizable, distinct class'" be identified, "substantial underrepresentation of that class of persons in

jury pools over a 'significant period of time'" be shown, and the susceptibility of the jury selection process to abuse or the lack of racial neutrality be proven. **Ringo v. Roper**, 472 F.3d 1001, 1008 (8th Cir.) (quoting Castaneda v. Partida, 430 U.S. 482, 494 (1977)), cert. denied, 128 S.Ct. 445 (2007). "A group of people is distinct when they have a shared attribute that defines or limits their membership, and when they share a community of interest." **United States v. Garcia**, 991 F.2d 489, 491 (8th Cir. 1993).

In **United States v. Canfield**, 879 F.2d 446, 446 (8th Cir. 1989), the Eighth Circuit rejected a defendant's claim that the jury that convicted her was not from a fair cross-section of the community because only one person out of the pool of thirty-six was a Minneapolis resident. The court found the defendant's allegations too vague because "Minneapolis residents represent a great diversity of people," "do not share a clearly identifiable factor," and "do not share common attitudes or experiences." **Id.** at 447. See also **Clay v. Bowersox**, 367 F.3d 993, 1004 (8th Cir. 2004) (finding no error in the denial of discovery about composition of grand jury absent any allegation that a particular cognizable group was underrepresented). Similarly, Petitioner's allegations that his jury pool did not represent a fair cross-section of the community because it was drawn from only one of two districts in the county fail to describe a sufficiently distinct group. Thus, he was not prejudiced by his trial counsel's failure to object to the composition of the jury pool.

Grounds Two through Five: Procedural Default. Respondent contends that grounds two through five of the petition are procedurally barred by Petitioner's failure to fairly

present them to the state court.  As noted above, with the exception of allegations in ground six that his trial and appellate counsel were ineffective for not properly raising issues, Petitioner has not addressed this contention.

It is well established that "[t]o be eligible for federal habeas corpus relief, a state prisoner must first exhaust his state law remedies and fairly present the facts and substance of his habeas claim to the state court." **Carney v. Fabian**, 487 F.3d 1094, 1096 (8th Cir.) (internal quotations omitted), <u>cert. denied</u>, 128 S.Ct. 721 (2007).  "'If a petitioner has not presented his habeas corpus claim to the state court, the claim is generally defaulted.'" **Id.** (quoting <u>Barrett v. Acevedo</u>, 169 F.3d 1155, 1161 (8th Cir. 1999) (en banc)); <u>accord</u> **Clay v. Norris**, 485 F.3d 1037, 1039 (8th Cir. 2007); **Malone v. Vasquez**, 138 F.3d 711, 716 (8th Cir. 1998).  The claim is also generally defaulted if it was presented to but not reviewed by the state court based on a state law ground, including a procedural basis, "that is independent of the federal question and adequate to support the judgment." **Collier v. Norris**, 485 F.3d 415, 425 (8th Cir. 2007); <u>accord</u> **Francis v. Miller**, 557 F.3d 894, 898 (8th Cir. 2009).

In the instant case, that portion of Petitioner's second ground challenging the constitutionality of the composition of his jury pool was rejected by the state appellate court on the grounds of a state procedural rule.  Consequently, "the only remaining question is whether the state's procedural bar was 'adequate' to preclude [federal habeas] review." **Id.** "'Ordinarily, violation of firmly established and regularly followed state rules . . . will be adequate to foreclose review of a federal [habeas] claim[.]'" **Id.** (quoting <u>Lee</u>

v. Kemna, 534 U.S. 362, 376 (2002)) (first alteration in original). "And, federal courts should not consider whether the state court *properly* applied its default rule to the claim; federal courts do not sit to correct a state court's application of its ordinarily adequate procedural rule . . . ." **Clemons v. Luebbers**, 381 F.3d 744, 750 (8th Cir. 2004).

Applying its procedural rule that claims of trial counsel error must be raised in a direct appeal, the state appellate court refused to review the merits of Petitioner's fair cross-section argument in his post-conviction appeal. There is no suggestion by Petitioner that this rule is not firmly established and regularly followed.

The state appellate court did not reject on procedural grounds Petitioner's unlawful arrest, inconsistent verdicts, and cruel and unusual punishment claims because these were never presented it. This omission results in a procedural default of the claims. See **Sweet v. Delo**, 125 F.3d 1144, 1150 (8th Cir. 1997); **Kennedy v. Delo**, 959 F.2d 112, 116 (8th Cir. 1992).

Because Petitioner's four claims are defaulted, the state courts are closed to the petitioner. **Clay**, 485 F.3d at 1039. If the state courts are closed to Petitioner, the defaulted claims may not be reached "unless he can meet strict cause and prejudice or actual innocence standards." **Collier**, 485 F.3d at 425 (internal quotations omitted); accord **Interiano v. Dormire**, 471 F.3d 854, 856 (8th Cir. 2006); **Moore-El v. Luebbers**, 446 F.3d 890, 896 (8th Cir. 2006).

"'[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's

efforts to comply with the State's procedural rule.'" **Greer v. Minnesota**, 493 F.3d 952,

958 (8th Cir.) (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)), cert. denied, 128

S.Ct. 672 (2007). There is no exhaustive catalog of the objective impediments, nor have

the precise contours of the cause requirement been clearly defined. **Ivy v. Caspari**, 173

F.3d 1136, 1140 (8th Cir. 1999). "At a minimum, however, [Petitioner] must show that

'something *external* to [him], something that cannot fairly be attributed to him,' caused the

procedural default." **Id.** (quoting Coleman v. Thompson, 501 U.S. 722, 753 (1991))

(second alteration in original).

In his sixth ground, Petitioner alleges that the ineffective assistance of his trial and

appellate counsel are the cause of his failure to fairly present all his claims to the state

court. This allegation is unavailing because it has not been presented to the state courts

as an independent ground. See **Taylor v. Bowersox**, 329 F.3d 963, 971 (8th Cir. 2003);

**Williams v. Kemna**, 311 F.3d 895, 897 (8th Cir. 2002).

Because Petitioner has not established cause for the default of his five claims, the

question of prejudice need not be reached. See **Schawitsch v. Burt**, 491 F.3d 798, 804

(8th Cir. 2007).

The merits of Petitioner's five claims may still be reached if he shows actual

innocence. **Cagle v. Norris**, 474 F.3d 1090, 1099 (8th Cir. 2007). "[T]he term 'actual

innocence' means 'factual innocence.'" **Niederstadt v. Nixon**, 505 F.3d 832, 840 (8th Cir.

2007), cert. denied, 128 S.Ct. 1875 (2008). To make the necessary showing of such

innocence sufficient to excuse a procedural default, Petitioner must come forward with

"new evidence." **Osborne**, 411 F.3d at 920. "Evidence is only 'new' if it was 'not available at trial and could not have been discovered earlier through the exercise of due diligence.'" **Id.** (quoting <u>Amerine v. Bowersox</u>, 238 F.3d 1023, 1029 (8th Cir. 2001)). Petitioner has not made this showing; indeed, Petitioner does not even allege that such evidence exists.

Accordingly, Petitioner's fair-cross section claim in his second ground and his claims in grounds three, four, and five are procedurally barred.

<u>Grounds Two through Five: The Merits.</u> Alternatively, these grounds are not cognizable or are without merit.

Petitioner's fair cross-section claim is without merit for the reasons set forth above.

In ground three, he challenges his arrests as being without probable cause.

"A Fourth Amendment claim is not cognizable on federal habeas review unless the state fails to provide 'an opportunity for full and fair litigation of [the] claim.'" **Palmer v. Clarke**, 408 F.3d 423, 437 (8th Cir. 2005) (quoting <u>Stone v. Powell</u>, 428 U.S. 465, 494 (1976)) (second alteration in original); <u>accord</u> **Sweet v. Delo**, 125 F.3d 1144, 1149 (8th Cir. 1997); **Hochstein v. Hopkins**, 113 F.3d 143, 147 (8th Cir. 1997). "[A]n opportunity for full and fair litigation" is denied when (1) "the state provided no procedure by which the prisoner could raise his Fourth Amendment claim," or (2) "the prisoner was foreclosed from using that procedure because of an unconscionable breakdown in the system." **Poole v. Wood**, 45 F.3d 246, 249 (8th Cir. 1995); <u>accord</u> **Willett v. Lockhart**, 37 F.3d 1265, 1272 (8th Cir. 1994) (en banc).

Petitioner filed a motion to suppress his identification. This motion was overruled following an evidentiary hearing at which Officer Beilsmith testified and was cross-examined. Petitioner offers no explanation why a motion challenging his arrests as being without probable cause could not have been filed and heard. Having failed to show that he was denied a full and fair opportunity to litigate his instant Fourth Amendment claim, that claim is not cognizable in this proceeding.

In his fourth ground, Petitioner argues that his constitutional rights were violated when the jury returned a verdict of guilty of the December 11 charge after also finding him not guilty of the December 10 charge, both charges depending entirely on the credibility of Haley.

"'Consistency in the verdict is not necessary.'" **United States v. Powell**, 469 U.S. 57, 62 (1984) (quoting Dunn v. United States, 284 U.S. 390, 393 (1932)). "[W]here truly inconsistent verdicts have been reached, '[t]he most that can be said . . . is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt.'" **Id.** at 64-65 (quoting Dunn, 284 U.S. at 393) (second and third alterations in original). And, "[i]n a single trial of multiple charges, the only relevant question is whether the evidence is constitutionally sufficient to support each count of conviction."[6] **Nesbitt v.**

---

[6]Petitioner is not challenging the sufficiency of the evidence.

**Hopkins**, 86 F.3d 118, 121 (8th Cir. 1996); <u>accord</u> **Cortis v. Kenney**, 995 F.2d 838, 841 (8th Cir. 1993).

In **Dunn**, the defendant argued that a jury's verdict of guilty on two of three charges was inconsistent with its verdict of guilty on the third charge because the evidence was the same for all counts. 284 U.S. at 392. Justice Oliver Wendell Holmes, writing for the Court, noted that "[i]f separate indictments had been presented against the defendant . . ., and had been separately tried, the same evidence being offered in support of each, an acquittal on one could not be pleaded as res judicata of the other. Where the offenses are separately charged in the counts of a single indictment the same rule must hold." **Id.** at 393. Similarly, if Petitioner had been tried first on the December 10 charges and been found not guilty, that finding would not preclude a finding in a separate trial of guilt on the December 11 charges.[7] His fourth ground is without merit.

Acknowledging that his 15-year sentence is within the Missouri sentencing guidelines, Petitioner argues in his fifth ground that it is nonetheless cruel and unusual punishment because it is disproportionate to the seriousness of the offense and his lack of a criminal history.

"The Eighth Amendment, which forbids cruel and unusual punishment, contains a 'narrow proportionality principle' that 'applies to noncapital sentences.'" **Ewing v. California**, 538 U.S. 11, 20 (2003) (quoting <u>Harmelin v. Michigan</u>, 501 U.S. 957, 996-97

---

[7]Additionally, the Court notes that the evidence was not the same. Petitioner was arrested after the December 11 sale and found to have $50 of the "buy money" in his possession.

(1991)); accord **Hutto v. Weber**, 275 F.3d 682, 684 (8th Cir. 2001) (Hutto). This principle did not preclude a defendant from being sentenced to two consecutive terms of 20 years imprisonment for possession with intent to distribute nine ounces of marijuana and distribution of marijuana, **Hutto v. Davis**, 454 U.S. 370, 374 (1982) (per curiam), or a defendant from being sentenced to life imprisonment with the possibility of parole after a third felony conviction, the first being for fraudulent use of a credit card to obtain $80 worth of goods or services, the second for passing a $28.36 forged check, and the third for obtaining $120.75 by false pretenses, **Rummel v. Estelle**, 445 U.S. 263, 284-85 (1980), but did preclude a defendant with no criminal record from being sentenced to life imprisonment for selling $20 of crack cocaine, **Henderson v. Norris**, 258 F.3d 706, 714 (8th Cir. 2001). Petitioner's sentence of 15 years imprisonment for possession with intent to distribute is no more disproportionate than the sentence at issue in **Davis**, supra.[8]

Ground Six: Ineffective Assistance of Trial and Appellate Counsel. Insofar as Petitioner's claims of ineffective assistance of trial and appellate counsel for not fairly presenting all his constitutional claims to the state courts are offered as cause for his procedural default, they are unavailing. Insofar as they are offered as independent claims

---

[8]In analyzing whether a sentence is disproportionate to the crime, courts look at "(i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions." **Solem v. Helm**, 463 U.S. 277, 292 (1983). Petitioner's procedural default precluded the development of a full record on these factors. "Intrajurisdictional and interjurisdictional analyses are necessary[, however,] 'only in the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality.'" **Hutto**, 275 F.3d at 684 (quoting Harmelin, 501 U.S.at 1005). The threshold comparison in the instant case does not create the necessary inference.

for relief, they also are procedurally barred, having never been presented to the state courts.

**Conclusion**

Petitioner's § 2254 claims were untimely filed. Alternatively, they are procedurally barred or are without merit. Accordingly,

**IT IS HEREBY RECOMMENDED** that the 28 U.S.C. § 2254 petition of Laurence Bonner be **DENIED** without further proceedings.

The parties are advised that they have **up to and including June 22, 2009**, in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in waiver of the right to appeal questions of fact. See **Griffini v. Mitchell**, 31 F.3d 690, 692 (8th Cir. 1994).

/s/ Thomas C. Mummert, III
THOMAS C. MUMMERT, III
UNITED STATES MAGISTRATE JUDGE

Dated this  10th  day of June, 2009.